IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOSEPH PORRELLO, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 10-0091-CV-W-ODS |
| ) | Crim. No. 00-00004-09-CR-W-ODS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

<u>ORDER AND OPINION (1) DENYING MOTION FOR POSTCONVICTION RELIEF
PURSUANT TO 28 U.S.C. § 2255 AND (2) DENYING CERTIFICATE OF
APPEALABILITY</u>

Pending is Movant's Motion for Postconviction Relief Pursuant to 28 U.S.C. § 2255. The motion is denied, and the Court declines to issue a Certificate of Appealability.

## II. BACKGROUND

Movant was convicted in March 2001 on a variety of charges relating to a series of jewelry store robberies. Specifically, Movant was convicted of one count of conspiring to interfere with commerce by armed robbery, two counts of aiding and abetting obstruction of commerce by robbery, two counts of using and carrying a firearm in relation to a crime of violence, and two counts of attempted money laundering. A summary of the criminal activity is contained in the first Eighth Circuit opinion issued in this case:

> A career criminal by the name of Clarence Burnett organized a group of robbers who successfully robbed numerous jewelry stores. The identities of his fellow robbers changed from robbery to robbery, with Michael Hatcher participating in two of the robberies. In each robbery, a group of men entered the jewelry store with at least one gun drawn and proceeded to ransack the jewelry cases. The robbers then would proceed back to Mr. Burnett's home, where they would inspect their haul. In each

> case, Mr. Burnett took the jewels to J's Pawnshop, operated by Angelo and Joseph Porrello, to fence the jewels to the Porrellos. According to the evidence at trial-which came primarily through the testimony of Clarence Burnett himself-the Porrellos were involved not only in the fencing of the jewelry but also in the planning of the robberies themselves, by, for instance, providing guns, bulletproof vests, and jewelry-store floor plans for the robberies. The Porrellos allegedly were motivated by the need to stock a new jewelry store owned by Joseph Porrello and a man named Ed Sandridge.

United States v. Hatcher, 323 F.3d 666, 669 (8th Cir. 2003).

The case was remanded by the Court of Appeals three times, once to resolve a discovery matter and twice for resentencing, following which Movant timely filed this request for postconviction relief. After the Government responded, Movant sought leave to file supplemental claims. This motion was denied, and Movant initiated an interlocutory appeal. While the appeal was pending, Movant filed a variety of motions, including a Motion to Strike the Government's Response, a Motion for More Definite Statement, and a motion seeking various forms of relief for what Movant described as "a fraud on the Court." These motions were denied after the Eighth Circuit dismissed the first appeal and issued its Mandate, whereupon Movant initiated a second interlocutory appeal. While this appeal was pending, Movant filed still more motions, including a discovery request, a Motion to Disqualify Judge, and another document seeking relief for alleged fraud. On November 16, 2010 – while the second interlocutory appeal was pending – these motions were denied and Movant was directed to file a Reply to the Government's Response notwithstanding the pending interlocutory appeal. The Court of Appeals dismissed the second interlocutory appeal on January 24, 2011, and issued its Mandate on March 17, 2011. Movant has not filed his Reply Suggestions, so the Court proceeds without them.

## II. DISCUSSION

Movant contends his trial counsel was ineffective for failing to raise three issues, each of which is based on a separate Supreme Court decision.[1] A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

All three of the cases identified by Movant were decided after his conviction was affirmed in the first appeal. Ordinarily, this raises an issue involving trial counsel's obligation to predict changes in the law but there is no need to delve into the issue in

---

[1]There is a fourth ground for relief asserted, but it simply reiterates Movant's belief that his attorney provided ineffective assistance by failing to raise the other three grounds.

3

this case because none of the cases aid Movant, so Strickland's prejudice prong cannot be satisfied with respect to any of Movant's claims.

### A.  Using and Carrying a Firearm

The firearm charges were predicated on 18 U.S.C. § 924(c)(1), which penalizes "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm . . . ."  Relying on Watson v. United States, 552 U.S. 74 (2007), Movant contends he could not be convicted under this statute because he did not personally use or carry a firearm.  Watson has no bearing on this case.  In Watson, the Supreme Court held that a person who trades illegal drugs for a firearm does not "use" a firearm "during and in relation to [a] drug trafficking crime."  However, brandishing a weapon during a crime of violence constitutes "use."

Watson does not address the essence of Movant's argument: that he cannot be guilty because he did not personally use or carry the gun.  Movant was convicted based on evidence that he aided and abetted the commission of the crime by providing firearms to the jewelry store robbers and being involved in the planning of the robberies. 18 U.S.C. § 2(a).  The failure to raise the argument did not prejudice Movant, so trial counsel was not ineffective.

### B.  "Normal Operating Expense"

Movant was convicted of attempted money laundering in violation of 18 U.S.C. § 1956(a)(1)(B).  This statute is violated when someone, knowing that "property involved in a financial transaction represents the proceeds of some unlawful activity, conducts or attempts to conduct such financial transaction" knowing that the transaction is designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."

Movant contends his attorney provided ineffective assistance with respect to the money laundering counts by failing to argue that the "[u]se of proceeds of the pawn

4

shop to purchase stolen property is a normal expense of operating a fense [sic], and is now a Non-Existent crime as now defined by the United States Supreme Court." Movant contends the Supreme Court's decision in United States v. Santos, 553 U.S. 507 (2008), demonstrates his activities were not attempted money laundering. However, Movant's understanding of Santos is incorrect.

Santos involved defendants involved in the operation of an illegal lottery. The money laundering counts were based on payments made to winners and commissions paid to individuals responsible for collecting and transporting the money. At issue was the meaning of the word "proceeds," and whether the word referred to the lottery business' "profits" or "receipts." Applying the rule of lenity, the Court held the word means "profits," so the use of money earned from the unlawful lottery business to pay that unlawful business' expenses could not constitute money laundering. Santos has no application in the present case because Movant has not been charged with engaging in unlawful activity with revenue from his pawn shop. He was charged with attempting to launder the profits from the unlawful activity – namely, the jewelry store robberies.

Movant's attempt to engage in financial transactions designed to conceal or disguise the nature or ownership of the profits from the jewelry store robberies constitutes attempted money laundering. Santos does not dictate a different conclusion, so Strickland's prejudice prong was not violated by counsel's failure to raise this issue.

### C. Judicial Interference With Choice of Counsel

Movant contends the Court seized all of his assets, which denied him retained counsel of his choice. He alleges that he "would have hired a more expensive and qualified attorney if money was made available to him." For support, Movant relies on the Supreme Court's decision in United States v. Gonzalez-Lopez, 548 U.S. 140 (2006). There are two obvious problems with Movant's argument.

First, Gonzalez-Lopez does not support the broad proposition Movant advances. In that case, the district court *erroneously* disqualified the defendant's attorney. In

holding that the defendant's rights were violated, the Court held that the Sixth Amendment "right to counsel of choice . . . commands, not that a trial be fair, but that a particular guarantee of fairness be provided – to wit, that the accused be defended by the counsel he believes to be best." 548 U.S. at 146. Consequently, the error was not harmless, and no showing of prejudice had to be demonstrated. Id. at 148-50. However, the case accepts and starts from the proposition that the trial court did something wrong to deprive the defendant of his chosen attorney. As Gonzalez-Lopez reiterated, the opinion does not prohibit courts from establishing criteria for admission of lawyers, permit a person to be represented by a person who is not a member of the appropriate bar or who operates under a conflict of interest, or bestow an indigent defendant the right to choose the attorney that will be appointed. Id. at 151-52. Movant has not suggested anything the Court did that was improper.

This leads to the second, and most critical, flaw in Movant's argument. The Court did not freeze Movant's assets. An order of forfeiture was issued *after* Movant was convicted (in accordance with the jury's verdict), but the Court did not order the seizure of Movant's assets before trial.

### D. Certificate of Appealability

In order to appeal, Petitioner must first obtain a Certificate of Appealability. 28 U.S.C. § 2253(c)(2) provides that a Certificate of Appealability should be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." This requires Petitioner to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quotation omitted).

The Court has conducted an independent review of the matter and concludes that a Certificate of Appealability should not be granted. When a Certificate of Appealability is denied, the court is required to "state why such a certificate should not issue." Fed. R. App. P. 22(b). The Court does not believe further proceedings are

6

warranted with respect to any of Movant's claims. The Supreme Court's decision in <u>Watson</u> does not hold that a person has to personally use or carry a firearm to be found guilty of violating 18 U.S.C. § 924(c)(1), and Movant was convicted on a theory that he aided and abetted others in violating the statute. The Supreme Court's decision in <u>Santos</u> is inapplicable because Movant was convicted based on the attempted laundering of the profits from the jewelry store robberies, not the expenses of his pawn shop. Finally, the Court did not interfere with Movant's choice of counsel; contrary to his suggestion, his assets were not frozen or seized before trial. In any event, even if such action had been taken, there could be no violation of Movant's rights absent a showing that the Court's actions were themselves improper.

### III. CONCLUSION

For these reasons, Movant's request for postconviction relief is denied, and the Court declines to issue a Certificate of Appealability.

IT IS SO ORDERED.

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, JUDGE
DATE: April 6, 2011	UNITED STATES DISTRICT COURT